IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ATKINS NUCLEAR SECURED, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:18cv1112 (AJT/JFA) |
| ) | |
| APTIM FEDERAL SERVICES, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for sanctions requesting an award of attorneys' fees and costs in the amount of $108,968.93. (Docket no. 45). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Background

On August 27, 2018, before filing a complaint, counsel for plaintiff sent defendant's associate senior counsel a letter forwarding a draft of a complaint and included the following request:

> We kindly ask you to confirm that neither APTIM Federal Services, LLC nor any of its members are citizens of Delaware, Tennessee, or Florida. Subject matter jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship, and the diversity analysis for limited liability companies takes into account the citizenship of each member. As you know, the parties cannot confer subject matter jurisdiction on a federal court by agreement, so it is in all parties' interest to confirm subject matter jurisdiction exists before Atkins Nuclear Secured, LLC ("Atkins") files the attached complaint. If diversity jurisdiction does not exist, Atkins intends to convert this Complaint for filing in a state court of its choosing.

(Docket no. 46-1 at 2).

Defendant's in-house counsel responded to plaintiff's request by email on August 27, 2018, stating that "APTIM has no plans to object to subject matter jurisdiction in the Eastern District of Virginia." (Docket no. 46-2). Defendant represents that its in-house attorneys did not conduct any independent research on the legal standard for determining the citizenship of limited liability companies ("LLCs") when responding to plaintiff's request and, at the time the response was sent, defendant did not intend to challenge subject matter jurisdiction. (Docket no. 49-1 ¶ 3) ("Bass Decl.").

Plaintiff proceeded with filing this action in federal court against defendant APTIM Federal Services, LLC ("APTIM") on August 30, 2018. (Docket no. 1) ("Compl."). The complaint, based on diversity jurisdiction, alleged breach of contract and breach of the implied covenant of good faith and fair dealing, and claimed damages of $536,601.00 plus interest, attorneys' fees, and costs. (Compl.). Regarding the citizenship of the parties, it alleged that plaintiff was a Delaware LLC with its principal place of business in Tennessee, and that plaintiff's sole member was a Delaware corporation with its principal place of business in Florida. (Compl. ¶ 1). It also alleged that, upon information and belief, APTIM was a Louisiana LLC with its principal place of business in Louisiana, and that none of its members were citizens of Delaware, Tennessee, or Florida. (Compl. ¶ 2).

Defendant retained outside counsel in this matter on September 4, 2018. (Docket no. 49-2 ¶ 2) ("Cappiello Decl."). On September 21, 2018, defendant filed a motion to dismiss for failure to state a valid cause of action and for failure to state a claim upon which relief may be granted (Docket no. 5), along with an accompanying memorandum in support (Docket no. 6), and noticed the motion for a hearing on October 19, 2018 (Docket no. 7). Defendant also filed a corporate disclosure statement that same day naming APTIM Government Solutions, LLC as the

sole member of APTIM Federal Services, LLC. (Docket no. 8). On October 5, 2018, plaintiff filed its opposition to the motion to dismiss (Docket no. 12) and on October 11, 2018, defendant filed its reply (Docket no. 13).

On October 3, 2018, the District Judge entered a Scheduling Order opening discovery, setting the Rule 16(b) initial pretrial conference for Wednesday, October 24, 2018, and instructing the parties to file a proposed discovery plan by Wednesday, October 17, 2018. (Docket no. 11). The order set the deadline to complete discovery as Friday, February 15, 2019, and set the final pretrial conference in front of the District Judge on Thursday, February 21, 2019. (*Id.*). The parties filed a Report of the Parties' Planning Meeting and Discovery Plan ("Joint Discovery Plan") on October 17, 2018. (Docket no. 14). On October 18, 2018, the undersigned entered a Rule 16(b) Scheduling Order approving the Joint Discovery Plan and cancelling the pretrial conference. (Docket no. 15). On October 18, 2018, the parties scheduled a settlement conference with the undersigned for December 5, 2018.

On October 19, 2018, counsel for the parties appeared before the District Judge and presented argument on defendant's motion to dismiss for failure to state a claim. (Docket no. 17). On October 24, 2018, the District Judge entered an order denying defendant's motion to dismiss without prejudice and granting plaintiff leave to file an amended complaint within fourteen days of entry of the order. (Docket no. 18). On November 7, 2018, plaintiff filed an amended complaint, alleging an alternative claim for breach of contract in addition to its original allegations. (Docket no. 19) ("Am. Compl."). Plaintiff's description of the parties and the basis for subject matter jurisdiction remained the same. (Am. Compl. ¶¶ 1-2, 4).

Defendant states that counsel first investigated APTIM's citizenship after they began drafting an answer to the amended complaint along with a third-party complaint, and that

3

counsel discovered that the parties in this action lacked complete diversity on November 15, 2018. (Docket no. 49 at 4-5; Bass Decl. ¶¶ 3-4; Cappiello Decl. ¶¶ 3-5). Counsel for defendant contacted counsel for plaintiff on November 16, 2018 to inform plaintiff that the parties were not completely diverse.[1] (Cappiello Decl. ¶¶ 6-9; Iverson Decl. ¶ 3). On November 19, 2018, plaintiff informed defendant that it would consent to the motion to dismiss for lack of subject matter jurisdiction without prejudice "while reserving the right to move for sanctions based on APTIM's earlier litigation and pre-litigation conduct." (Docket no. 49-5 at 2). Defendant declined to include that language and filed a motion to dismiss for lack of subject matter jurisdiction without consent, arguing that both parties were citizens of Delaware, thereby defeating the diversity of citizenship requirement for diversity jurisdiction. (Docket nos. 20, 21). Specifically, defendant stated that APTIM Federal Services, LLC's sole member, APTIM Government Solutions, LLC, was a citizen of Delaware because APTIM Government Solutions, LLC's sole member, APTIM Corp., was incorporated in Delaware. (Docket no. 21 at 4). Because an LLC's citizenship depends on the citizenship of its members, APTIM was a citizen of Delaware and therefore not diverse from plaintiff. (*Id.*). Defendant noticed the motion to dismiss for a hearing on December 14, 2018. (Docket no. 22).

On November 21, 2018, the parties cancelled the settlement conference scheduled with the undersigned magistrate judge. On December 3, 2018, plaintiff filed a response to the motion to dismiss, conceding lack of jurisdiction based on defendant's representations and consenting to dismissal of this action without prejudice. (Docket no. 23). On December 4, 2018, plaintiff filed a notice waiving oral argument regarding the motion to dismiss for lack of jurisdiction. (Docket

---

[1] The parties dispute some of the details of the conversation that took place during that call. (Docket no. 49 at 5; Cappiello Decl. ¶¶ 6-9; Docket no. 50 at 7 n.3; Docket no. 51 ¶¶ 3-4 ("Iverson Decl.")). They also dispute whether plaintiff later used the motion for sanctions as a way to induce defendant to settle the case. (Docket no. 49 at 7, 13 n.2; Cappiello Decl. ¶ 12; Docket no. 50 at 11 n.6; Docket no. 51 ¶¶ 10-11 ("Iverson Decl.")).

4

no. 24). The District Judge cancelled the hearing, indicating that he would decide the second motion to dismiss on the pleadings. Plaintiff refiled its claims against defendant in the Circuit Court of the City of Alexandria on December 28, 2018. (Docket no. 49 at 15 n.5).

On December 28, 2018, plaintiff filed this motion for sanctions, alleging defendant "vexatiously and wantonly multipl[ied] the proceedings in bad faith" and seeking attorneys' fees and costs pursuant to this court's inherent authority. (Docket no. 31). Plaintiff noticed the hearing on the motion for sanctions for Friday, January 18, 2019 at 10:00 a.m. (Docket no. 34). That same day, plaintiff filed a motion to seal the motion for sanctions (Docket no. 25), a notice of filing under seal (Docket no. 26), and a sealed version of the memorandum in support (Docket no. 30). On January 2, 2019, the parties filed a joint motion to suspend all expert disclosure deadlines pending a ruling on defendant's motion to dismiss for lack of subject matter jurisdiction (Docket no. 35), which the court granted on January 3, 2019 (Docket no. 37). Also on January 3, 2019, defendant filed an unopposed motion to continue the hearing on plaintiff's motion for sanctions to February 22, 2019 (Docket no. 38), which the court granted that same day (Docket no. 43). On January 8, 2019, the undersigned denied plaintiff's motion to seal and required plaintiff to either file an unredacted version of its pleadings in the public record or file a notice withdrawing its motion for sanctions. (Docket no. 44). Plaintiff filed an unsealed, unredacted version of its motion for sanctions and memorandum in support on January 11, 2019 (Docket nos. 45, 46), and noticed the hearing for February 22, 2019 (Docket no. 48). Defendant filed its opposition brief on January 25, 2019 (Docket no. 49), and plaintiff filed its reply brief and accompanying declaration on January 31, 2019 (Docket nos. 50, 51).

On February 6, 2019, the parties filed a joint motion to stay all discovery and pretrial deadlines because of the then-pending motion to dismiss and waived oral argument on the

motion. (Docket nos. 52, 53). On February 8, 2019, the District Judge granted the motion to dismiss for lack of jurisdiction and denied the motion to stay as moot.[2] (Docket no. 54). Counsel for both parties appeared before the undersigned magistrate judge on Friday, February 22, 2019 and presented argument on plaintiff's motion.

## **Proposed Findings and Recommendations**

Plaintiff requests that this court impose sanctions only under its inherent authority. (Docket no. 45 at 1). It is undisputed that federal courts possess the inherent authority to sanction parties. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991). This includes situations "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975)). While a court can invoke this power even if it can sanction the party's conduct under another rule, it should exercise this authority with restraint. *Id.* at 49-50. The Fourth Circuit has recognized that the American Rule provides that "each party remains responsible for its own attorneys fees absent explicit statutory authority or agreement to shift them" and that a district court should shift attorneys' fees using its inherent authority "only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 543 (4th Cir. 2002). The moving party bears the burden of demonstrating that they are entitled to attorneys' fees. *Stradtman v. Republic Servs., Inc.*, 121 F. Supp. 3d 578, 581 (E.D. Va. 2015).

---

[2] A court maintains jurisdiction to address issues collateral to the merits of the claims after those claims have been dismissed for lack of subject matter jurisdiction, including issues regarding sanctions. *See Willy v. Coastal Corp.*, 503 U.S. 131, 137-39 (1992); *Samsung Elec. Co. v. Rambus, Inc.*, 440 F. Supp. 2d 512, 519-21 (E.D. Va. 2006) ("[S]anction proceedings, whether by way of Rule 11, contempt, the inherent powers of the court, or statute . . . present collateral issues as to which a district court retains jurisdiction, notwithstanding a dismissal of the underlying case which gave it jurisdiction or even if it did not have subject matter jurisdiction at the outset."). Therefore, although the District Judge granted defendant's motion to dismiss for lack of subject matter jurisdiction and this action is now pending in state court, this court retains jurisdiction to resolve this motion.

Plaintiff advances a two-part argument in support of its request for sanctions: (1) that defendant multiplied the proceedings in this case, and (2) that defendant acted in bad faith by failing to investigate or disclose its citizenship earlier. (Docket no. 46 at 6-9). Because the undersigned finds that the resolution of this matter depends on whether the court applies an objective bad faith standard or a subjective bad faith standard, the court must first determine the appropriate standard to apply when shifting attorneys' fees and costs pursuant to only its inherent authority and not pursuant to a statute or rule.

1. <u>Subjective Bad Faith Standard</u>

A court may assess attorneys' fees against a party "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). When discussing sanctions for fee-shifting pursuant to their inherent authority, courts often distinguish between objective and subjective bad faith. *See, e.g., Stradtman*, 121 F. Supp. 3d at 587-88. Plaintiff, relying on this court's ruling in *Stradtman*, argues that courts within the Fourth Circuit "apply an objective standard of bad faith when determining whether to impose sanctions." (Docket no. 46 at 8). Defendant argues for a higher standard, asserting that plaintiff has misstated the bad faith standard applied in invoking inherent authority. (Docket no. 49 at 7-9).

While it is clear that an objective bad faith standard applies to sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, it is not clear which standard applies when sanctioning a party under the court's inherent authority. Courts within the Fourth Circuit have stated that sanctions pursuant to their inherent authority require a higher bad faith standard than the objective standard applied under Rule 11 or § 1927. *See, e.g., Sanford v. Virginia*, 689 F. Supp. 2d 802, 813 (E.D. Va. 2010), *disagreed with on other grounds by McKenzie v. Norfolk S. Ry. Co.*, 497 Fed. App'x 305 (4th Cir. 2012) ("[T]he misconduct required [to impose sanctions

7

under the court's inherent authority] is almost always something more egregious than that required for other types of sanctions."); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, No. 3:09cv529, 2011 WL 1225989, at *19 (E.D. Va. Mar. 29, 2011) ("A review of *Chambers*, as well as authority in the Fourth Circuit . . . teaches that the inherent power is reserved for quite serious misconduct."). In *Stradtman*, defendants sought sanctions in the form of attorneys' fees and costs pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure 54, and the court's inherent authority, alleging plaintiffs filed and litigated the case long after knowing there was no good faith basis for doing so. 121 F. Supp. 3d at 580. This court first analyzed the request for sanctions under 28 U.S.C. § 1927, which the court concluded only required showing objective bad faith. *Id.* at 581-82. That standard, less stringent than the subjective bad faith standard, "does not require malice or ill will; 'reckless indifference to the law will qualify. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.'" *Id.* at 582 (quoting *Collins v. Dollar Tree Stores*, No. 2:09cv486, 2010 WL 9499078, at *3 (E.D. Va. May 28, 2010)).

In its inherent authority analysis, the court in *Stradtman* recognized that "the level of misconduct required [to sanction the parties under the inherent authority] 'is almost always something more egregious than that required for other types of sanctions.'" *Id.* at 587 (quoting *Sanford*, 689 F. Supp. 2d at 813). The court also recognized that there is no clear rule as to whether imposing sanctions under its inherent authority requires a finding of subjective or objective bad faith, but it did not identify which standard it would apply to that analysis. *Id.* at 587-88. Instead, because it held that defendants failed to meet their burden of showing that they were entitled to attorneys' fees under the lesser § 1927 objective bad faith standard, the court also declined to impose sanctions pursuant to its inherent authority. *Id.* at 588. Therefore,

8

*Stradtman* does not stand for the proposition that this court should use an objective bad faith standard when considering fee-shifting sanctions under its inherent authority and it provides strong guidance that a higher standard might be required.

Other circuits have addressed this issue more directly, also finding that inherent authority requires more than objective bad faith or simple recklessness. In *Purchasing Power, LLC v. Bluestem Brands, Inc.*, the Eleventh Circuit held that a sanction under the court's inherent authority requires a finding of subjective bad faith with a limited exception for conduct "tantamount to bad faith," a standard not satisfied by recklessness alone. 851 F.3d 1218, 1223 (11th Cir. 2017). *Purchasing Power*, like this case, involved an error in determining the citizenship of an LLC for the purposes of diversity jurisdiction. *Id.* at 1220-21. The attorneys relied on the representations of the client that diversity of citizenship existed, and neither the attorneys nor the court verified this fact. *Id.* at 1221-22. The court first focused its analysis on whether to apply the subjective or objective bad faith standard, interpreting not only its own precedent but also Supreme Court precedent to determine that a subjective bad faith standard was appropriate. *Id.* at 1223-24 (interpreting the *Chambers* majority, in its response to Justice Kennedy's concern about lack of guidance in defining bad faith, as implying that "the subjective nature of the inherent powers standard restricts a court's ability to impose sanctions"). However, the Eleventh Circuit did not require that the moving party introduce direct evidence to establish subjective bad faith. *Id.* at 1224. Instead, it found that the standard "can be met if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224-25.

In *In re Keegan Management Co., Securities Litigation*, the Ninth Circuit considered a district court decision finding that recklessness alone could constitute a basis for sanctions pursuant to the court's inherent authority. 78 F.3d 431, 436 (9th Cir. 1996). The court

9

specifically delineated between the recklessness standard under § 1927 and the bad faith standard under the court's inherent authority, finding that its case law established that recklessness alone was insufficient to find bad faith under the court's inherent authority. *Id.*

Having considered counsel's arguments in their pleadings and at the hearing, the cases presented to the court by counsel, and this court's own research, the undersigned recommends a finding that the court should apply a subjective bad faith standard when deciding a motion for fee-shifting sanctions solely under its inherent authority. It is clear that in the Fourth Circuit an objective standard applies for determining bad faith under § 1927 or Rule 11. Unfortunately, many of the decisions in the Fourth Circuit cited by the parties, and other decisions reviewed by the court, involve requests for sanctions under § 1927, Rule 11, and the court's inherent authority, and they fail to make a specific finding as to the standard to be applied in deciding a request only under the court's inherent authority. In those cases the courts usually either find that a party has shown bad faith under an objective standard and is entitled to sanctions under § 1927 or Rule 11, or that a party has failed to show bad faith under the lesser objective standard and sanctions are not appropriate. While there is no clear precedent in the Fourth Circuit that states the appropriate standard to apply in an inherent authority analysis, the decisions in the Fourth Circuit do support the argument that a higher standard should be applied in an inherent authority analysis than the standard applied in a § 1927 or Rule 11 analysis. That guidance, along with the decisions in other circuits that address this issue more directly and find that a subjective standard should apply, form the basis for this recommendation.

Applying a subjective standard, the undersigned further recommends a finding that the evidence does not establish an award of sanctions under the court's inherent authority. The actions of defendant's in-house counsel leading up to the litigation were, at best, ill-advised.

Plaintiff, understanding it bore the burden of establishing subject matter jurisdiction, reasonably investigated such jurisdiction by posing the question to defendant before filing this action in federal court. (Docket no. 46-1 at 2). Its question was direct, explained why it sought this information, stated the correct legal analysis for determining citizenship of an LLC, informed defendant that the parties could not confer subject matter jurisdiction, and made clear that defendant's answer would impact the forum in which plaintiff would file. (*Id.*). Although in-house counsel's response that defendant did not plan to object to subject matter jurisdiction did not clearly state whether defendant was a citizen of the specified states (Docket no. 46-2 at 2), plaintiff could reasonably understand that response to mean that diversity of citizenship existed. However, plaintiff has not established that defendant's in-house counsel was aware of its citizenship and failed to disclose it, or that its failure to investigate at this early stage amounted to subjective bad faith.

Further, plaintiff has failed to establish that outside counsel had actual knowledge of their client's citizenship prior to November 15, 2018 or otherwise engaged in conduct amounting to subjective bad faith. However, the undersigned does recommend a finding that, once defendant hired outside counsel and counsel began their preparation to file an affirmative motion asking the court to dismiss plaintiff's claims with prejudice, the failure to further investigate the citizenship of defendant was reckless. Defendant admits that neither its in-house or outside counsel investigated its citizenship until November 2018 despite responding to plaintiff's pre-litigation question and filing a Rule 12(b)(6) motion. (Docket no. 49 at 3-4). The undersigned is unconvinced by defendant's argument that plaintiff could have determined that complete diversity did not exist based on the corporate disclosure statement that was filed by defendant on September 21, 2018, or that defendant did not need to consider its own citizenship when

responding to the complaint and seeking affirmative relief from the court. (*Id.* at 19-22). Plaintiff performed a reasonable investigation into defendant's citizenship before filing the complaint with the information it had available to it.[3] Defendant filed its corporate disclosure statement at the same time that it filed its first motion to dismiss. (Docket nos. 5, 8). The Federal Rules of Civil Procedure require a party to assert "[e]very defense to a claim for relief in any pleading . . . in the responsive pleading if one is required." Fed. R. Civ. P. 12(b). Rule 12 specifically enumerates "lack of subject-matter jurisdiction" in its non-exhaustive list of defenses. Fed. R. Civ. P. 12(b)(1). Although parties can never waive lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), counsel should have considered that defense as part of its responsive pleading, performed an investigation into that defense, and subsequently notified opposing counsel and this court that the court lacked jurisdiction. Further, even if plaintiff had a

---

[3] Defendant relies on one in-circuit case, *SunTrust Bank v. Village at Fair Oaks Owner, LLC*, 766 F. Supp. 2d 686 (2011), to establish that plaintiff could not rely on defendant alone for its pre-litigation investigation and that defendant had no legal obligation to investigate or disclose its client's citizenship. (Docket no. 49 at 19). The undersigned is not recommending a finding that defendant had a legal obligation to disclose the citizenship of the parties to opposing counsel, the proposition for which defendant cites this case. (*Id.*). Rather, in light of plaintiff's August 27th question and given Rule 12's requirements to include all available defenses in a responsive pleading, counsel should have performed an investigation into defendant's citizenship by the time it began drafting its first Rule 12(b) motion and raised that issue with counsel and the court if the investigation revealed the parties were not diverse. Defendant makes a similarly unconvincing argument that *Village at Fair Oaks* demonstrates that plaintiff did not meet their burden to establish subject matter jurisdiction because they only made negative allegations in their complaint. (*Id.* at 19 n.9). The court in that case recognized that the Fourth Circuit had not expressly rejected the use of negative jurisdictional allegations. *Village at Fair Oaks*, 766 F. Supp. 2d at 693-94. Further, the defendants there challenged the jurisdictional allegations in their first responsive pleading. *Id.* at 687. Defendant in this case also had the opportunity to challenge the sufficiency of those allegations in a 12(b)(1) motion at the same time it filed its 12(b)(6) motion but failed to do so.

In addition, defendant cites *Augustyniak Insurance Group, Inc. v. Astonish Results, L.P.*, Nos. 11-464S, 11-564S, 2013 WL 998770 (D.R.I. Mar. 13, 2013), an unpublished, out-of-circuit case, to establish that it had no affirmative duty to determine its client's citizenship before filing a responsive pleading. (Docket no. 49 at 19). There, the court declined to impose sanctions for a defendant's failure to investigate its citizenship in part because, "as soon as Plaintiffs squarely posed the question [regarding subject matter jurisdiction, defendant] responded within twenty-four hours." 2013 WL 998770, at *10. Essentially, the plaintiffs not only failed to properly plead jurisdiction, but they also failed to properly investigate it. *Id.* By contrast, plaintiff in this action undertook an investigation to determine jurisdictional facts before filing the complaint and directly posed the question of citizenship months before defendant or its counsel performed any sort of investigation.

12

responsibility to investigate citizenship after defendant filed the corporate disclosure statement, it did not have access to that statement before defendant filed its first Rule 12(b) motion.

While defendant's actions were reckless, the undersigned accepts defendant's representations that defendant and its counsel did not know that subject matter jurisdiction did not exist until November, and that it disclosed this information to opposing counsel and this court within a reasonable time after it made that determination. (Docket no. 49 at 5; Bass Decl. ¶¶ 3-4; Cappiello Decl. ¶¶ 4-9). The undersigned does not find that either direct or circumstantial evidence reveal that defendant willfully concealed the information or misrepresented its citizenship with the intention of delaying or multiplying these proceedings, or that it performed in any other way demonstrating subjective bad faith. Accordingly, the undersigned recommends a finding that defendant and its counsel did not act with the subjective bad faith required to impose a sanction of attorneys' fees pursuant to the court's inherent authority, and that the court should deny plaintiff's motion for sanctions.

2. Objective Bad Faith Standard

Alternatively, if the District Judge believes that an objective standard should apply, the undersigned recommends a finding that defendant engaged in reckless conduct rising to the level of objective bad faith that would support a partial award in favor of plaintiff. As explained above, once defendant retained outside counsel, its failure to perform any investigation before filing its first Rule 12(b) motion was reckless. Counsel should know the citizenship of its client when it practices before this court, and they should have investigated its citizenship at least by the time they were preparing the first Rule 12(b) motion, which required defendant to include all available defenses. Clearly, they did not.

Defendant argues it was "honest and promptly diligent regarding the issue of subject matter jurisdiction." (Docket no. 49 at 9). Although counsel for defendant disclosed to opposing

13

counsel and this court that it lacked subject matter jurisdiction once it had actual knowledge of that fact, that did not absolve counsel of its responsibility to have reasonably investigated the citizenship of its client before it filed its first responsive pleading, especially when considered in light of plaintiff's direct question regarding citizenship weeks earlier. Their failure to perform any investigation until November under these circumstances establishes reckless conduct that meets the objective bad faith standard. That conduct multiplied the proceedings before this court because the proceedings following the first motion to dismiss would not have occurred but for defendant's failure to investigate its citizenship at that stage. Accordingly, if the District Judge applies an objective bad faith standard, the undersigned recommends a finding that defendant and its counsel acted recklessly, that their conduct multiplied the proceedings, and that plaintiff is entitled to an award of the attorneys' fees and costs from September 21, 2018, the date defendant filed its first responsive pleading, to December 26, 2018, the last date of fees requested by plaintiff in its motion. (Docket no. 47-1).

### **Relief**

Because the undersigned recommends a finding that awarding plaintiff attorneys' fees pursuant to the court's inherent authority requires a showing of subjective bad faith, and that defendant's conduct did not rise to that level, the undersigned recommends that the court deny plaintiff's motion for sanctions.

If the District Judge believes that an objective bad faith standard applies and adopts the undersigned's alternative recommendation that the court find that defendant acted recklessly, the undersigned recommends granting plaintiff's motion for sanctions in the amount of $103,683.98, which represents the fees requested by plaintiff beginning on September 21, 2018, the date defendant filed its first motion to dismiss along with the costs incurred in this action. The court

recommends that the fees incurred prior to the filing of the first motion to dismiss not be awarded on the basis that the duty to investigate and provide counsel and the court notice of the lack of subject matter jurisdiction did not arise until defendant took the affirmative act of seeking relief from the court through the filing of its Rule 12(b) motion.

In its memorandum in support of the motion for sanctions plaintiff devoted more than eight pages to the total amount of attorneys' fees and costs incurred as a result of defendant's conduct. (Docket no. 46 at 10-18). Plaintiff cited the appropriate Fourth Circuit authority to be used in making an award of fees and described in detail in the memorandum and exhibits the qualifications and the work performed on behalf of plaintiff. The opening memorandum included a declaration of counsel concerning the reasonableness of the rates charged by counsel and the paralegal, a copy of counsel's biographical information and experience, and provided a detailed spreadsheet showing by date worked a description of the work performed by each timekeeper, the amount of time billed, the amount excluded from the request, and the total amount of fees and costs. (Docket no. 46).

In response to this detailed request, defendant did not provide a written opposition to the rates or amounts requested but merely stated in footnote that it "requests an opportunity to brief the reasonableness of Atkins' attorneys' fees request." (Docket no. 49 p.16 n.7). At the hearing on February 22, 2019, the court informed defendant's counsel that any response to the reasonableness of the request for fees should have been included in the opposition that was filed. Nevertheless, the undersigned did allow counsel for defendant to address the issue of the reasonableness of the requested fees at the hearing. In vague and general terms counsel questioned the amounts billed, suggesting that plaintiff billed for duplicate work but did not provide any specific time entries or tasks that would support that argument. Counsel also stated

that plaintiff did not prevail on its motion to seal its time records and billing information. Counsel did not address the hourly rates being sought by plaintiff for its counsel and paralegal.

The undersigned has reviewed the supporting information provided by plaintiff and, in the event sanctions are awarded, recommends a finding that the hourly rates requested by plaintiff are consistent with those awarded by this court in other similar cases and are reasonable. The undersigned has also reviewed the detailed time entries provided by plaintiff and recommends a finding that the records reflect hours that were reasonably and necessarily incurred in performing services in this case. While the total amount of fees incurred is significant, plaintiff was required to oppose a motion to dismiss, prepare an amended complaint, prepare a joint discovery plan, and was faced with a deadline for completing all discovery in this action by February 15, 2019. To the parties' credit, an early settlement conference was scheduled and counsel undertook the necessary steps to prepare the information required by the court for that conference. As with any significant case in this court, plaintiff did not have the luxury of waiting to see what might happen with a settlement conference or waiting until a response to the amended complaint was filed to start working on the case. Plaintiff had to take the necessary steps to prepare this case for trial, including staffing it with appropriate personnel. While there may be some minor instances where more than one person was involved on a particular task, coordinating the work to be done is a necessary component of any litigation. The fact is that none of these fees should have been incurred by plaintiff after the date defendant filed its first motion to dismiss. The undersigned has also reviewed the factors set forth in *Barber v. Kimbrell's, Inc.* and recommends that this court find the loadstar figure to an appropriate amount for an award in this case without any further modification. *See* 577 F.2d 216 n.28 (4th Cir. 1978)

16

(adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Accordingly, if the District Judge applies an objective bad faith standard, the undersigned recommends an award of the requested attorneys' fees beginning September 21, 2018, which amounts to $103,581.00 in fees and $102.98 in costs.

## Conclusion

For these reasons, the undersigned recommends a finding that awarding attorneys' fees pursuant to the court's inherent authority requires a showing of subjective bad faith, that plaintiff has failed to establish that defendant's conduct met that standard, and that plaintiff's motion for sanctions be denied. If the District Judge instead applies an objective bad faith standard, the undersigned recommends a finding that an award of $103,581.00 in attorneys' fees and $102.98 in costs for plaintiff is appropriate and reasonable.

## Notice

By means of the court's electronic filing system the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 5th day of March, 2019.

/s/
John F. Anderson
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia