IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ATKINS NUCLEAR SECURED, LLC,      )
                                  )
        Plaintiff,                )
                                  )
v.                                )     Civil Action No. 1:18-cv-1112 (AJT/JFA)
                                  )
APTIM FEDERAL SERVICES, LLC,      )
                                  )
        Defendant.                )

## **MEMORANDUM OPINION AND ORDER**

Before filing this action, Plaintiff Atkins Nuclear Secured, LLC ("Atkins") attempted to confirm with Defendant Aptim Federal Services, LLC ("Aptim") that complete diversity of citizenship existed as between them. In response to Atkins' inquiry, Aptim's in-house counsel told Atkins that Aptim had "no plans to object to subject matter jurisdiction in the Eastern District of Virginia." Based on that response, Atkins then filed this breach of contract action on August 30, 2018, invoking jurisdiction solely based on diversity of citizenship under 28 U.S.C. §1332. Thereafter, while preparing its answer to Atkins' amended complaint, Aptim's outside counsel, whom Aptim had retained after the suit was filed, learned that complete diversity did not exist because the sole member of a limited liability company that served as the sole member of Aptim, also a limited liability company, shared the same citizenship as a member of Atkins, also a limited liability company. Outside counsel immediately disclosed this information to Atkins, after which Aptim filed a motion to dismiss for lack of subject matter jurisdiction, to which Atkins consented.

Atkins then moved for sanctions, *see* Plaintiff Atkins Nuclear Secured, LLC's Motion for Sanctions [Doc. 45] ("the Motion for Sanctions"), in the form of reasonable attorneys' fees and

costs, on the ground that Aptim acted in bad faith, either when its in-house counsel advised that Aptim would not object to federal jurisdiction without investigating Aptim's citizenship for that purpose or when outside counsel's failed to investigate Aptim's citizenship before filing a motion to dismiss that did not raise an objection to jurisdiction, or both.

The Motion was referred to a Magistrate Judge, who, after holding a hearing on the Motion, issued Proposed Findings of Fact and Recommendations [Doc. 56] in which he found that Aptim's counsel behaved recklessly in failing to investigate Aptim's citizenship but recommended that the Motion for Sanctions be denied on the ground that Atkins failed to show that Aptim's counsel acted in bad faith under a subjective bad faith standard. Atkins and Aptim objected in part to the Proposed Findings of Fact and Recommendations. *See* Aptim Federal Services, LLC's Partial Objections to Proposed Findings of Fact and Recommendations [Doc. 58]; Plaintiff Atkins Nuclear Secured, LLC's Objections to Proposed Findings of Fact and Recommendations [Doc. 60] (collectively, "the Objections"). This Court held a hearing on the Motion and the Objections on April 12, 2019, after which the Court took the matter under advisement.

For the reasons stated below, the Motion for Sanctions is DENIED.

## I. BACKGROUND

The following facts, mostly taken from the Magistrate Judge's Proposed Findings of Fact, which the Court adopts, are undisputed[1]:

On August 27, 2018, before filing this case, counsel for Atkins sent Aptim's in-house counsel a draft of the complaint and a letter with the following request:

---

[1] Neither party objected to these proposed factual findings. The Court has reviewed them for clear error and finds none. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

> We kindly ask you to confirm that neither APTIM Federal Services, LLC nor any of its members are citizens of Delaware, Tennessee, or Florida. Subject matter jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship, and the diversity analysis for limited liability companies takes into account the citizenship of each member. As you know, the parties cannot confer subject matter jurisdiction on a federal court by agreement, so it is in all parties' interest to confirm subject matter jurisdiction exists before Atkins Nuclear Secured, LLC ("Atkins") files the attached complaint. If diversity jurisdiction does not exist, Atkins intends to convert this Complaint for filing in a state court of its choosing.

[Doc. 56 at 1]. The letter was originally directed to Wade M. Bass, Aptim's Associate General Counsel, and Aidan Delgado, Counsel. [Doc. 46-1]. In an email response that same day, Mr. Delgado, without researching the standard for determining the citizenship of limited liability companies ("LLCs"), stated that "APTIM has no plans to object to subject matter jurisdiction in the Eastern District of Virginia." [Doc. 46-2].

Atkins filed this action on August 30, 2018. *Id.* The Complaint alleged that Atkins was a Delaware LLC with its principal place of business in Tennessee, and that Atkins' sole member was a Delaware corporation with its principal place of business in Florida. *Id.* It alleged "upon information and belief" that Aptim was a Louisiana LLC with its principal place of business in Louisiana and that none of its members were citizens of Delaware, Tennessee, or Florida. *Id.*

On September 4, 2018, Aptim retained outside counsel to defend the action on its behalf. *Id.* On September 21, 2018, Aptim filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* That same day, Aptim filed its Corporate Disclosure Statement, which stated that Aptim's sole member was another LLC, APTIM Government Solutions, LLC. *Id.* at 2–3.[2]

---

[2] On October 3, 2018, the Court issued a Scheduling Order, which scheduled the initial Rule 16(b) pre-trial conference for October 24, 2018, the filing of a proposed discovery plan by October 17, 2018, a discovery cut-off date of February 15, 2019, with the parties authorized to begin discovery, and a final pre-trial conference February 21, 2019. *Id.* at 3. On October 18, 2018, the Magistrate Judge entered a Rule 16(b) Scheduling Order approving the

On October 24, 2018, this Court, after a hearing on October 19, 2018, denied Aptim's motion to dismiss but granted Atkins leave to file an amended complaint, which it filed on November 7, 2018. *Id.* The Amended Complaint repeated the same subject matter jurisdictional allegations as the original complaint.

According to Aptim, its counsel first discovered the jurisdictional defect on November 15, 2018 while drafting its Answer to the Amended Complaint, together with a third-party complaint. Specifically, counsel learned that Aptim's sole member, APTIM Government Solutions, LLC, had as *its* sole member APTIM Corp., a Delaware corporation, thereby making both LLC's (APTIM Federal Service, LLC and APTIM Government Solutions, LLC) citizens of Delaware for the purposes of determining federal subject matter jurisdiction, the same citizenship as Atkins. *Id.* at 3–4. The next day, November 16, 2018, Aptim informed Atkins that the parties were not completely diverse. *Id.* at 4. On November 19, 2018, Atkins told Aptim that it would not contest a motion to dismiss for lack of subject matter jurisdiction "while reserving the right to move for sanctions based on APTIM's earlier litigation and pre-litigation conduct." *Id.* APTIM refused to include such a reservation in any consent motion and filed on an unconsented basis its motion to dismiss for lack of jurisdiction. *Id.*

On November 21, 2018, the parties canceled the settlement conference then scheduled for December 5, 2018, and on December 3, 2018, Atkins filed its response to Aptim's motion to dismiss, which conceded the lack of subject matter jurisdiction. *Id.* The Court granted the motion to dismiss on February 8, 2019. *Id.* at 6. While the motion was pending, Atkins refiled its claims in the Circuit Court of the City of Alexandria. *Id.* at 5.

---

Joint Discovery Plan and canceling the Rule 16(b) pre-trial conference. On October 18, 2018, the parties scheduled a settlement conference with the Magistrate Judge for December 5, 2018.

Atkins filed the Motion for Sanctions on December 28, 2018, in which it seeks attorneys' fees and costs pursuant to the Court's inherent sanctioning authority on the ground that Aptim "vexatiously and wantonly multipl[ied] the proceedings in bad faith." *Id.* The Magistrate Judge held a hearing on the matter on February 22, 2019 and issued his Proposed Findings of Fact and Recommendations on March 5, 2019, in which he recommended that sanctions not be imposed. [Doc. 56]. The Magistrate Judge concluded that the Motion for Sanctions turned in large part on whether a subjective or objective bad faith standard applies to an award of sanctions under the Court's inherent sanctioning authority, an unresolved issue in this Circuit. *Id.* at 7. After reviewing cases within and outside this Circuit, the Magistrate Judge concluded that a subjective bad faith standard applies, and based on that standard, recommended that the Court not impose sanctions, principally on the ground that neither Aptim's in-house counsel nor its outside counsel was aware of APTIM's corporate citizenship and did not fail to disclose it or otherwise engaged in subjective bad faith. *Id.* at 7–11. However, the Magistrate Judge also recommended that if this Court were to conclude that an objective bad faith standard applies, the Court should grant the Motion for Sanctions. *Id.* at 13. The Magistrate Judge explained this recommendation as follows:

> [O]nce [Aptim] retained outside counsel, its failure to perform any investigation before filing its first Rule 12(b) motion was reckless. Counsel should know the citizenship of its client when it practices before this court, and they should have investigated its citizenship at least by the time they were preparing the first Rule 12(b) motion, which required [Aptim] to include all available defenses. Clearly, they did not.

*Id.* Finally, the Magistrate Judge recommended that in the event the Court imposes sanctions, it should award Atkins $103,683.98, which includes $103,581.00 in attorneys' fees that Atkins

5

requested beginning on September 21, 2018, the date Aptim filed its first motion to dismiss, and $102.98 in costs. *Id.* at 17.

Atkins objects to the R&R on the grounds that an objective, not a subjective, bad faith standard should be applied in assessing Aptim's conduct, but that in any event, "the Report's proposed findings of fact satisfy 'subjective bad faith' as that standard is articulated in the non-binding authority cited in the Report." [Doc. 60 at 1]. Aptim agrees that the subjective bad faith standard should apply and that no sanctions are warranted but conditionally objects to the R&R on the grounds that even were the Court to adopt an objective bad faith standard, sanctions are not warranted, and, were they awarded, the amount the Magistrate Judge recommends is excessive. [Doc. 58 at 2, 20].

## II. LEGAL STANDARD

After a magistrate judge files a report and recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). As to the portions of the report and recommendation to which no objections have been filed, the district court need only review those portions for clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

requested beginning on September 21, 2018, the date Aptim filed its first motion to dismiss, and $102.98 in costs. *Id.* at 17.

Atkins objects to the R&R on the grounds that an objective, not a subjective, bad faith standard should be applied in assessing Aptim's conduct, but that in any event, "the Report's proposed findings of fact satisfy 'subjective bad faith' as that standard is articulated in the non-binding authority cited in the Report." [Doc. 60 at 1]. Aptim agrees that the subjective bad faith standard should apply and that no sanctions are warranted but conditionally objects to the R&R on the grounds that even were the Court to adopt an objective bad faith standard, sanctions are not warranted, and, were they awarded, the amount the Magistrate Judge recommends is excessive. [Doc. 58 at 2, 20].

## II. LEGAL STANDARD

After a magistrate judge files a report and recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). As to the portions of the report and recommendation to which no objections have been filed, the district court need only review those portions for clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

## III. ANALYSIS

### A. Applicability of a Subjective or Objective Bad Faith Standard

In seeking sanctions, Atkins relies exclusively on the Court's inherent authority. As the Magistrate Judge correctly observed, the Court may award sanctions under its inherent authority to punish a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and should do so "with restraint." [Doc. 56 at 6]. Atkins argues that Aptim, in answering Atkins' jurisdictional inquiry before the suit was filed without further investigation into its corporate citizenship and failing to uncover the jurisdictional defect at an earlier point post-filing, acted in bad faith and "vexatiously and wantonly multiplied the proceedings in this case in bad faith by failing to undertake a reasonable investigation into its own corporate citizenship and misrepresenting jurisdictional facts." [Doc. 46 at 1].

Whether an objective or subjective bad faith standard applies in assessing Aptim's conduct is an unsettled issue in this Circuit and elsewhere. After surveying the state of the law in this and other Circuits, the Magistrate Judge recommended that the Court apply a subjective bad faith standard. *Id.* at 10. Applying that standard, the Magistrate Judge found that the record contains no evidence that either Aptim's in-house counsel or its outside counsel possessed a subjective bad faith state of mind in failing to investigate Aptim's citizenship at an earlier juncture or otherwise engaged in conduct evincing subjective bad faith. *Id.*

The Court has conducted a *de novo* review of the applicable legal standard and, based on that review, concludes that a subjective bad faith standard applies to sanctions under the Court's inherent power. Although the Fourth Circuit has never squarely addressed the issue, this Court in other cases has adopted the view that a district court's inherent sanctioning power is narrower than its authority to impose sanctions under Rule 11 or 28 U.S.C. § 1927 and requires a showing

of greater culpability. *See, e.g., Sanford v. Virginia*, 689 F. Supp. 2d 802, 813 (E.D. Va. 2010), *disagreed with on other grounds by McKenzie v. Norfolk S. Ry. Co.*, 497 Fed. App'x 305 (4th Cir. 2012) ("[T)he misconduct required [to impose sanctions under the court's inherent authority] is almost always something more egregious than that required for other types of sanctions."); *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 2011 WL 1225989, at *19 (E.D. Va. Mar. 29, 2011) ("A review of *Chambers*, as well as authority in the Fourth Circuit ... teaches that the inherent power is reserved for quite serious misconduct.").

In concluding that a subjective bad faith standard applies, the Court finds support in both United States Supreme Court and Fourth Circuit cases for the proposition that a showing of more serious misconduct than that required under § 1927 or Rule 11 is required to impose sanctions under its inherent authority. In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court considered whether a federal court's inherent power to sanction bad faith conduct had been displaced by statutes and rules, such as § 1927 and Rule 11. *Id.* at 35, 42–43. After holding that the courts' inherent power had not been displaced, *id.* at 46, the Supreme Court observed that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 45–46 (quotation omitted) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–259 (1975). In that regard, "if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Id.* at 46 (quotations and footnote omitted) (quoting *Universal Oil Prod. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946); *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). Contrasting a court's inherent authority

8

to sanction with the sanctioning power conferred by Rule 11 and other statutory schemes, the Court further observed that

> while the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in *bad-faith conduct or willful disobedience* of a court's orders, many of the other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard. Rule 11, for example, imposes an *objective standard* of reasonable inquiry which does not mandate a finding of bad faith.

*Id.* at 47 (emphasis added) (footnote omitted). In that same vein, the Court, in addressing certain due process concerns raised by Justice Kennedy in his dissenting opinion, opined that the federal courts would use their inherent power sparingly in awarding sanctions for bad faith, due to the difficulty of proving subjective bad faith:

> Indeed, Rule 11 was amended in 1983 precisely because the subjective bad-faith standard was difficult to establish and courts were therefore reluctant to invoke it as a means of imposing sanctions. Consequently, there is little risk that courts will invoke their inherent power "to chill the advocacy of litigants attempting to vindicate all other important federal rights." To the extent that such a risk does exist, it is no less present when a court invokes Rule 11.

*Id.* at 47 n.11 (citations omitted) (quoting Kennedy, J., dissenting).

Although *dicta*, the Supreme Court's discussion reflects an assumption, based upon the legislative history and the statutory sanctioning scheme, that the Court's inherent authority to sanction parties who *actually* acted in bad faith remained intact. This assumption is consistent with the Supreme Court's explanation that the inherent sanctioning power is intended to punish willful or wanton behavior. The nature of the referenced conduct embedded in this standard reflects at its core a focus on the actors' subjective intent (that is, something beyond negligence or even recklessness) to disrupt the judicial process or manipulate it to harm a litigation opponent, as opposed to simply whether the conduct had the effect of causing disruption. In

9

*United States v. Shaffer Equipment Co.*, the Fourth Circuit interpreted *Chambers* as authorizing a court to use its inherent power to impose sanctions "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the [judicial] process," citing in further support of that view cases all involving intentional wrongdoing. 11 F.3d 450, 462 (4th Cir. 1993) (citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir. 1989) (knowingly filing a contract suit on the basis of a fraudulent purchase agreement); *Hadaco Engineering Co. v. Gostle*, 843 F.2d 376 (9th Cir. 1988) (misleading the preparer of an important environmental report and then disclosing the report in discovery but excising crucial portions of it); *United States v. National Medical Enters., Inc.*, 792 F.2d 906 (9th Cir. 1987) (government attorney making *ex parte* derogatory statements to its witness about the opposing party to influence the witness's testimony at trial)); *see also Maynard v. Nygren*, 332 F.3d 462, 470 (7th Cir. 2003) ("The district judge's finding of no willfulness . . . precludes any sanction against counsel under the inherent powers of the court.").

Courts outside of this Circuit have reached a similar conclusion. In *Purchasing Power, LLC v. Bluestem Brands, Inc.*, the Eleventh Circuit held that a sanction under the court's inherent authority requires a finding of subjective bad faith with a limited exception for conduct "tantamount to bad faith," a standard not satisfied by recklessness alone. 851 F.3d 1218, 1223 (11th Cir. 2017).[3] In *In re Keegan Management Co. Securities Litigation*, the Ninth Circuit, in

---

[3] As the Magistrate Judge noted, the facts in *Purchasing Power* involved, as in this case, an error in determining the citizenship of an LLC for the purposes of diversity jurisdiction. [Doc. 56 at 1220–21]. There, the attorneys relied on the client's representations that diversity of citizenship existed, and neither the attorneys nor the court verified this fact. *Id.* at 1221–22. After reviewing its own precedent and Supreme Court precedent, the Eleventh Circuit held that the subjective bad faith standard should apply. *Id.* at 1223–24 (interpreting the *Chambers* majority, in its response to Justice Kennedy's concern about lack of guidance in defining bad faith, as implying that "the subjective nature of the inherent powers standard restricts a court's ability to impose sanctions"). Accordingly, the Court stated that "recklessness alone does not constitute conduct tantamount to bad faith." *Id.* at 1223. Nevertheless, the Court

considering whether a showing of recklessness could warrant imposition of sanctions under the court's inherent authority, specifically distinguished the recklessness standard under § 1927 from the bad faith standard under the court's inherent authority, finding that recklessness alone was not enough to show bad faith under the court's inherent authority. 78 F.3d 431 (9th Cir. 1996). Federal district courts have similarly concluded that sanctions under their implied authority are limited to addressing conduct that is both especially serious and intentional. *See, e.g., Lawson v. Sun Microsystems*, 2010 WL 503054 at *3 (S.D. Ind. Feb.8, 2010) (reasoning that "[c]areless conduct does not equate to 'wanton' conduct" and "*wanton* usually connotes malice (in the criminal-law sense), while *reckless* does not." (emphasis in original) (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 879–80 (3d ed.1982)); *Suntrust*, 2011 WL 1225989, at *19–20 (collecting and analyzing *Chambers*, *Shaffer*, and the cases cited above).[4]

Under the bad faith standard that Atkins proposes, the central inquiry is whether a reasonable lawyer in the position of Aptim's counsel would have further inquired into Aptim's citizenship status earlier than its in-house and outside counsel did, regardless of their actual motives. This analysis is precisely the type of objective reasonableness inquiry the Supreme Court in *Chambers* distinguished from the standard applicable to the inherent sanctioning authority. For all the above reasons, the Court concludes that the subjective bad faith standard is applicable to the Motion for Sanctions.

---

also held that direct evidence of subjective bad faith was not required to show bad faith, because the standard could still be met "if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.* at 1224–25.
[4] Although these cases appear to be the majority approach, the Court recognizes that the Second Circuit, in a published opinion, has concluded that a standard similar to that applicable to a court's inherent power apples to sanctions under § 1927, without any "meaningful difference" between them. *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[A]n award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power. Indeed, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." (internal citation omitted)).

## B. Analysis of the Motion Under the Subjective Bad Faith Standard

In determining whether sanctions are to be imposed, the Court finds itself cast upon cross currents between what would have been useful, beneficial, or even commendable conduct and what was legally or ethically required under the circumstances, however less than optimum that conduct might have been. In that regard, whether under either a subjective or an objective bad faith standard,[5] the analysis of sanctions *vel non* cannot be divorced from a consideration of (1) Atkins' affirmative duty to establish subject matter jurisdiction; (2) Aptim's limited, essentially non-responsive and irrelevant response to Atkins' pre-filing inquiry; (3) Atkins' own limited and inadequate investigation into subject matter jurisdiction, including its failure to engage in any follow-up inquiry into Aptim's pre-filing substantive non-response; (4) the extent to which there was any affirmative obligation on Aptim to investigate and confirm Atkins' allegations of subject matter jurisdiction before it did; and (5) the extent to which an improper motive can be inferred from Aptim's conduct. All of these issues are to be considered within the context of what many courts have observed is a common failing to sufficiently investigate jurisdictional facts when dealing with the citizenship of limited liability companies or limited partnerships. *See, e.g., McAuslin v. Grinnell Corp.*, 200 WL 726886, at *10 n.10 (E.D. La. June 5, 2000).

Atkins clearly had at all times the affirmative duty to establish the Court's subject matter jurisdiction; as its own pre-filing letter to Aptim stated, the parties could not by agreement confer such jurisdiction on the Court. Atkins also knew that its alternative to federal court if diversity

---

[5] Although Atkins argues that the objective bad faith standard should apply, Atkins alternatively contends, relying on Ninth and Eleventh Circuit cases, that "the term 'subjective' in the sanctions context has a specialized meaning that is less stringent than its meaning in other legal doctrines." [Doc. 60 at 7]. *See Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) ("Knowing or reckless conduct meets this [subjective" bad faith] standard."); *Purchasing Power*, 851 F.3d at 1223 (adopting a "narrow exception for conduct tantamount to bad faith" where the conduct is "particularly egregious"). But even under this articulation of the standard, which the Court does not finds persuasive in light of *Chambers*, the Court finds the evidence in the record insufficient to warrant sanctions.

12

could not be established was filing in state court, where Atkins represented it was prepared to proceed.[6] As measured by the substance of its own inquiry, it knew that Aptim's response, that it did not plan on objecting to federal court jurisdiction, was irrelevant and non-responsive to whether it could safely file in federal court. Yet, it made no further inquiry or investigation before filing in this Court based on "information and belief," a typically inadequate basis for an allegation. *See Skillstorm, Inc. v. Elec. Data Sys.*, LLC, 666 F. Supp. 2d 610, 619–20 (E.D. Va. 2009); *see also In re Lilley*, 2011 WL 1428089, at *3 (Bankr. M.D.N.C. Apr. 13, 2011) ("Courts routinely reject conclusory recitals couched upon information and belief."); *Essex Ins. Co. v. Miles*, 2010 WL 5069871, at *2–*3 (E.D. Pa. Dec. 3, 2010) ("[R]eliance . . . on information and belief cannot transform legal conclusions into plausible factual allegations."); *In re Gluth Bros. Constr., Inc.*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (statement made upon information and belief was merely "a formulaic recitation of the element"). Likewise, it made no further investigation into the jurisdictional facts after Aptim filed its corporate disclosure statement on September 21, 2018, disclosing that Aptim's sole member is APTIM Government Solutions, LLC.[7]

As to Aptim's conduct, after a *de novo* review of the factual record, the Court, like the Magistrate Judge, does not find any evidence that either Aptim's in-house or outside counsel

---

[6] *See SunTrust Bank v. Vill. at Fair Oaks Owner, LLC*, 766 F. Supp. 2d 686, 690 (E.D. Va. 2011) ("[T]he burden of alleging facts sufficient to establish federal subject-matter jurisdiction lies with the plaintiff, and the LLC appears to be under no present legal obligation to disclose to plaintiff its membership or citizenship. In the absence of such facts, plaintiff is not left entirely without recourse; instead, principles of federalism simply dictate that such recourse must be had in a state court of competent jurisdiction, at least until such time as plaintiff gains knowledge of the requisite facts to plead diversity of citizenship adequately.").
[7] Aptim attached as exhibits in its opposition to the Motion for Sanctions publicly available records from Louisiana pertaining to APTIM Government Solutions, LLC, which listed APTIM Corp. as its member and that APTIM Corp. was a Delaware corporation. *See* [Doc. 49-2 at 6, 9].

actually possessed any intent to delay or disrupt the litigation in failing to investigate Aptim's corporate citizenship sooner.

With regard to Aptim's in-house counsel, as the Magistrate Judge observed, "plaintiff has not established that defendant's in-house counsel was aware of its citizenship and failed to disclose it, or that its failure to investigate at this early stage amounted to subjective bad faith." [Doc. 56 at 11]. That said, in-house counsel's failure to conduct any investigation into the citizenship of its own companies before responding to Atkins' inquiry, or to disclose in that response that he had not conducted any investigation, gives the Court pause and concern. It does not appear that an appropriate investigation would have been difficult or time-consuming; and the Court can speculate about, and even reasonably assume, a number of reasons why in-house counsel responded as it did, including a lack of knowledge concerning how diversity of citizenship is determined; an assumption, without verification, that all Aptim affiliated entities would have a Louisiana citizenship, given the location of its headquarters; or simply not wanting to spend the time necessary to conduct an investigation. The Court cannot assume from the record, however, that Aptim had an improper motive in responding as it did, as this Court's lack of jurisdiction would void results favorable, as well as unfavorable, to Aptim.

In any event, however desirable an investigation would have been, the issue remains whether Aptim had an obligation to investigate under the circumstances, such that its failure to do so provides the basis for sanctions. The Court cannot conclude that it does, under either a subjective or objective bad faith standard. Atkins' inquiry cannot be viewed as imposing a duty on Aptim that did not otherwise exist; and the Court cannot find a basis for imposing such a duty of investigation at that point in time. Nor can the Court find that Aptim had assumed a duty of investigation by virtue of its response. Its response, as non-responsive as it was, did not

misrepresent any jurisdictional facts. Rather, it conveyed a position that was irrelevant to Atkins' jurisdictional inquiry and which Atkins knew was irrelevant by the content of its own inquiry.

As to outside counsel's conduct, the Court likewise concludes that under either a subjective or objective good faith standard, there was no basis for sanctions. There is no evidence in the record to suggest that counsel had actual knowledge of their client's citizenship prior to November 15, 2018, when they discovered the citizenship issue. Indeed, outside counsel disclosed the issue to Plaintiff upon discovery of it. Atkins claims that counsel had a duty to investigate and confirm the Court's jurisdiction before filing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. 12(b)(6), which, as it turned out, the Court had no jurisdiction to consider. It cites no authority for this proposition and the Court has found none. Rule 11, by its terms, does not impose such a duty, *see* Rule 11(b); and the Court does not read Rule 12(b) as imposing such a duty.[8] Aptim was not affirmatively representing or confirming that the Court had jurisdiction. Aptim's motion to dismiss simply assumed the truth of Plaintiff's allegations,[9] which included that the Court had jurisdiction. Any such duty of investigation is more directly implicated with answering the allegations of the Amended Complaint; and within that context counsel did, in fact, investigate, and discover the jurisdictional facts destroying

---

[8] In *Augustyniak Insurance Group, Inc. v. Astonish Results, L.P.*, the court considered whether a defense counsel's failure to adequately investigate the jurisdictional facts pertaining to his client before answering a complaint was sanctionable, and determined that it was not. 2013 WL 998770 (D.R.I. Mar. 13, 2013). The court observed that it was "well-settled" that "the burden to establish the jurisdictional facts rests squarely on the party who invokes the court's diversity jurisdiction." *Id.* at *9. Accordingly, the court stated,
> Here, the Court finds that it was Plaintiffs that failed in their obligation to properly plead the factual foundation for diversity jurisdiction and then, for the duration of the entire period for which they now seek sanctions, failed to attempt to buttress their inadequate jurisdictional pleading with the requisite jurisdictional facts.

*Id.* at *10.

[9] Aptim's pre-filing response also provided some further basis for Aptim's counsel's assumption that the Court had jurisdiction to consider the motion to dismiss, as the Plaintiff alleged.

jurisdiction, which it immediately disclosed to Atkins. In any event, there is no evidence that either Aptim's in-house or outside counsel intentionally delayed or disrupted the litigation in failing to research Aptim's corporate citizenship.

For all the above reasons, sanctions are not warranted.

## IV. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiff Atkins Nuclear Secured, LLC's Objections to Proposed Findings of Fact and Recommendations [Doc. 60] be, and the same hereby are, OVERRULED; and it is further

ORDERED that Defendant Aptim Federal Services, LLC's Partial Objections to Proposed Findings of Fact and Recommendations [Doc. 58] be, and the same hereby are, OVERRULED as moot; and it is further

ORDERED that the findings of fact in the Magistrate Judge's Proposed Findings of Fact and Recommendations [Doc. 56] be, and the same hereby are, ADOPTED; and it is further

ORDERED that Plaintiff Nuclear Secured, LLC's Motion for Sanctions [Doc. 45] ("the Motion for Sanctions") be, and the same hereby is, DENIED.

The Clerk is directed to forward a copy of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 24, 2019